UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No. 05-10220-NMG

UNITED STATES OF AMERICA

v.

JAMES D. GOODWYN

**REPORT AND RECOMMENDATION RE:
MOTION PURSUANT TO 28 U.S.C. § 2255 TO VACATE,
SET ASIDE, OR CORRECT SENTENCE
(DOCKET ENTRY # 55)**

**June 1, 2012**

**BOWLER, U.S.M.J.**

The court referred the above motion filed by defendant James D. Goodwyn ("the defendant") under 28 U.S.C. § 2255 ("section 2255") to this court for an evidentiary hearing and a report and recommendation on ground one. Ground one sets out an ineffective assistance of counsel claim on the basis that the defendant "requested counsel to file a direct appeal" and "counsel did not file an appeal." (Docket Entry ## 55-57).

On November 3, 2011, this court held an evidentiary hearing. On November 30, 2011, the United States of America ("the government") filed a brief and the defendant filed a brief the following day. The matter is therefore ripe for review.

PROCEDURAL BACKGROUND

On August 24, 2005, a one count Indictment was returned charging the defendant with distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1). The government also filed an Information pursuant to 21 U.S.C. § 851 ("the Information") notifying the defendant that it "will seek increased punishment" because of a prior felony drug conviction rendered in Brockton District Court on August 8, 1996. (Docket Entry # 4).

On September 1, 2005, retained counsel ("counsel") filed an appearance on the defendant's behalf. A few days later at his arraignment, the defendant pled not guilty to Count One and agreed to voluntary pretrial detention.

In March 2006, the court set a hearing for a change of plea. In August 2006, counsel filed objections to the presentence report ("PSR") raising a Sixth Amendment challenge to the use of prior state convictions as predicate offenses given the lack of an Indictment and a jury trial in the state court proceedings.[1]

---

[1] The argument was not a clear winner. The Supreme Court in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), "'held that prior convictions were not among the sentence-enhancers that must be submitted to a jury and proved beyond a reasonable doubt.'" U.S. v. Rivera-Rivera, 555 F.3d 277, 291 (1st Cir. 2009). The Court therefore left undisturbed" the portion of Almendarez-Torres v. United States, 523 U.S. 224 (1998), "which treated prior convictions as sentencing factors, rather than offense elements." Id.; accord U.S. v. Hicks, 575 F.3d 130, 144 (1st Cir. 2009). Indeed, the First Circuit has "'ruled with a regularity bordering on the monotonous, that given the explicit exception and force of Almendarez-Torres, the rationale of Apprendi does not apply to sentence-enhancement provisions based upon prior criminal convictions.'" U.S. v. Rivera-Rivera, 555 F.3d at 291 (quoting United States v. Ivery, 427 F.3d 69, 74-75

2

(Docket Entry # 27). Counsel also objected to the PSR's "reliance on enhancements under 21 U.S.C. § 841(b)(1)(B) or 21 U.S.C. § 851 to increase the statutory maximum of the charged offense" as a Sixth Amendment violation.[2] (Docket Entry # 27).

On November 2, 2006, the court held the change of plea hearing. Represented by counsel, the defendant changed his plea to guilty on Count One.

On March 13, 2007, counsel filed a sentencing memorandum seeking a downward adjustment to ten years of incarceration followed by eight years of supervised release. The guideline sentencing range ("GSR") was 262 to 327 months. (Docket Entry # 71). The government sought a 262 month sentence. The PSR likewise recommended a 262 month sentence. (Docket Entry # 81, p. 19). During the March 15, 2007 sentencing hearing and in support of a downward adjustment, counsel spoke at length about the difficulties the defendant faced as a child, his acceptance

---

(1st Cir. 2005)); see also U.S. v. McKenney, 450 F.3d 39, 45 (1st Cir. 2006) (Supreme Court rejected "argument that under the Constitution, recidivism must be treated as an element of the offense, included in the indictment, and proved to a jury beyond a reasonable doubt") (citing Almendarez-Torres v. U.S., 523 U.S. at 239. At the sentencing hearing, counsel acknowledged the argument as a misstatement of the law albeit one supported by a dissenting opinion. See Rangel-Reyes v. U.S., 547 U.S. 1200 (2006)(Thomas, J., dissenting from denial of certiorari).

[2] The court addressed the objection at the March 15, 2007 disposition.

3

of responsibility, the extraordinary medical impairment to his vision and the nature of his criminal record.

At the hearing, the court imposed a sentence almost six years below the GSR. Specifically, the defendant received a sentence of 192 months followed by eight years of supervised release. The court also recommended placement in a facility where the defendant could "receive appropriate medical care for [his] eye condition" and/or occupational skills training to help [him,] adjust to anticipated limitations due to [his] failing eyesight." (Docket Entry # 61, p. 43). At the close the sentencing hearing, the court informed the defendant that he had a right to appeal the sentence and that, if he chose to appeal, he "must do so within ten days." (Docket Entry # 61, p. 45).

The parameters of what took place thereafter and the substance of communications between counsel and the defendant are disputed. The defendant maintains he told counsel to file a direct appeal. (Docket Entry # 56). Counsel submits that, after discussing the matter with the defendant on two occasions without reaching a decision, counsel did not have any further discussions during which the defendant told him to file a direct appeal. (Docket Entry ## 72 & 81).

On March 14, 2008, the defendant filed the section 2255 motion. The motion included a motion to reduce the sentence pursuant to 18 U.S.C. § 3582(c)(2). On January 27, 2010, the

court denied the motion to reduce the sentence and took the section 2225 motion under advisement.

On June 29, 2011, the court issued a Memorandum and Order denying the defendant's April 2011 motion to amend and dismissing grounds two and three in the section 2255 motion. With respect to ground one, the court took the motion under advisement pending receipt of an affidavit from counsel addressing: "1) whether he consulted with [the defendant] regarding a direct appeal and 2) whether (and if so, when) [the defendant] instructed him to file a direct appeal." (Docket Entry # 71).

Counsel filed the affidavit on July 6, 2011. Therein, counsel attests that he discussed the defendant's right to file a direct appeal with the defendant. He advised the defendant not to file a direct appeal "[b]ased upon the court's imposition of a below guideline sentence." (Docket Entry # 72). Counsel also averred that he "did not have any further discussions with [the defendant] where he told me to file a direct appeal." (Docket Entry # 72). Upon review of the affidavit, the court referred the motion as to ground one to this court to conduct an evidentiary hearing and issue a report and recommendation.

Counsel, the defendant and Donna Ruffin ("Ruffin"), the defendant's mother, testified at the November 3, 2011 evidentiary hearing. Counsel and the government filed briefs after the

hearing.  Based on the testimony and exhibits, this court finds the following facts.

FACTUAL BACKGROUND[3]

Counsel represented the defendant from September 2005 to April 2007.  Counsel's representation included the change of plea hearing and the sentencing hearing.  The sentencing hearing began at 4:05 p.m. and lasted approximately one hour.  After the sentencing hearing, counsel spoke briefly with the defendant about filing a direct appeal.[4]

During this brief conversation, the defendant did not tell counsel to file a direct appeal.  Counsel, however, advised the defendant not to file a direct appeal because "the government could cross-appeal" and seek a longer sentence.  (Docket Entry # 81, p. 10).  Counsel also informed the defendant that, because the sentence was below the guideline range, he did not "feel the sentence would go lower," rather, "[i]f anything, it would go higher."  (Docket Entry # 81, p. 10).  During the conversation,

---

[3] This court listened to the testimony in open court and reviewed the full transcript of the hearing.  The summary of the hearing does not reflect the entire testimony.  Nonetheless, this court has considered the entire testimony in arriving at a recommendation.

[4] The defendant testified that he did not speak with counsel after the sentencing hearing.  For reasons explained below and taking into account that the hearing ended around 5:00 p.m., this testimony was not credible.

6

counsel also posited that the government's chances of success "were probably better than ours on an appeal." (Docket Entry # 81, p. 10). After the conversation, the defendant left the courthouse and was thereafter incarcerated at the Plymouth County House of Correction ("Plymouth") in Plymouth, Massachusetts.

Two or three days later, the defendant telephoned counsel from Plymouth and the two had a ten minute conversation about whether to file a direct appeal. At the outset of the conversation, the defendant told counsel, "I think we should file an appeal."[5] Thereafter, counsel advised the defendant of his belief that the sentence "would probably remain intact." (Docket Entry # 81, p. 18). The "gist of" what counsel told the defendant was that because the court gave a sentence below the guideline range, "There was a chance [the sentence] would go up and there was very little chance that it would go down." (Docket Entry # 81, pp. 18 & 25).

After counsel advised the defendant that an appeal raised a greater risk of receiving a longer sentence, the defendant did not tell counsel to file a direct appeal. Contrary to the defendant's testimony, he did not state, "I think we should still appeal." (Docket Entry # 81, p. 25). In fact, during the

---

[5] The defendant testified that he made this statement at the beginning and a similar statement at the end of the conversation. Counsel does not recall the statements.

7

conversation, the defendant never explicitly instructed counsel to file a notice of appeal.  The defendant also never made such a request or demand to counsel in writing.[6]

The conversation ended without any instruction or communication from the defendant to file a direct appeal but, instead, with a mutual understanding that the defendant would think about it and contact counsel if he wanted to file an appeal.  The defendant knew it was his responsibility to get back in touch with counsel if he wanted to file an appeal.[7]  In short, at the outset of the conversation, the defendant presented his thought that they should file an appeal.  Counsel then outlined

---

[6]  Counsel testified that he had not seen "anything in writing affirmatively requesting that [he] file an appeal."  (Docket Entry # 81, p. 17).

[7]  The following exchange took place during the defendant's cross examination:

>    Q.  So before we get to that, there was some time period between the conversation on the phone and the time in which you say you went to segregation?
>
>    A.  Yes.
>
>    Q.  You didn't call him at any point in time there to exercise the right to appeal?
>
>    A.  No.
>
>    Q.  But you did know that it was left like you had to get back to him in order to let him know that, right?
>
>    A.  Yes.

(Docket Entry # 81, pp. 37-38).

8

the risks of an appeal.  Thereafter, the conversation ended with counsel telling the defendant to think about whether he wanted to file an appeal and to get back to him if he did.[8]

The defendant did not communicate with counsel or otherwise contact counsel after the conversation notwithstanding the opportunity.  At no point near the end of the conversation did the defendant say to counsel, "I think we should still appeal."  Counsel also did not have any conversation about a direct appeal with a member of the defendant's family.

The defendant's testimony that "the last thing" he said to counsel was "I still think I want to appeal" or "I think we should still appeal" (Docket Entry # 81, pp. 25-26) is not credible.  The following three reasons convince this court that the testimony is not accurate.[9]

First, Plymouth records contradict the defendant's time line of events.  The defendant testified that when he told counsel, "I

---

[8] On cross examination, the defendant testified:

> Q.  And then after that part he said words to the effect of think about it and get back to me, right, make sure this is what you want to do, because he didn't want your sentence to go up higher and he was trying to advocate for you, right?
>
> A.  Yes.

(Docket Entry # 81, p. 37).

[9] Elsewhere, petitioner attests that he "asked [counsel] to file a notice of appeal."  (Docket Entry # 57).  The same reasons refute the credibility of this averment.

9

think we should still appeal," counsel told him to "think about it and give [him] a call back in a few days." (Docket Entry # 81, p. 25). The defendant explained that he did not contact counsel in the days after the telephone call because "a day or two" after the conversation, a "minor incident about [his] medication" resulted in his placement in segregation. The disciplinary report for the incident, however, shows that it occurred on April 24, 2007, five weeks after the sentencing. Housing records at Plymouth confirm that the defendant remained in the general population in the weeks after the March 15, 2007 sentencing until he moved to segregation on April 24, 2007. These records significantly weaken the defendant's credibility.

Second, the defendant fails to provide a satisfactory explanation about why he did not telephone counsel during the purported "day or two" prior to the incident. The defendant's testimony that he was not allowed to telephone his attorney for the two week period in segregation, even assuming dubitante the truth of the testimony,[10] also fails to explain why the defendant did not or could not send counsel a letter during this time period. The defendant also knew he had only ten days after the

---

[10] The defendant explained that the allotted recreation time in segregation "was too early for [the defendant] to make phone calls" and Plymouth did not allow him to schedule a special time to make a telephone call to his attorney. (Docket Entry # 81, p. 26).

10

March 15, 2007 sentencing to exercise his right to appeal. (Docket Entry # 81, p. 35).

Third, counsel was far more credible than the defendant in his manner of testifying and in the substance of his testimony. Counsel readily and forthrightly admitted he could not recall certain events. He does, however, "specifically remember discussing the sentence" and is certain that the defendant never told him "he wanted to appeal and direct [him] to file an appeal." (Docket Entry # 81, p. 15). If, as the defendant testified, he told counsel at the end of the telephone conversation, "I think we should still appeal" (Docket Entry # 81, p. 25), counsel would have remembered the statement in light of its relative significance.

Returning to the facts, as a result of the April 24, 2007 incident, the defendant stayed in segregation from April 24 to May 5, 2007. He was then transferred to a federal prison in Coleman, Florida. Transported from "Brooklyn, Oklahoma, then [to] Coleman," the defendant did not have telephone privileges until a day or two after his arrival at Coleman because he did not have "a PIN number." (Docket Entry # 81, pp. 26-27). He arrived in Coleman in June 2007.[11]

---

[11] The defendant's failure to contact counsel upon arrival at the federal prison in Coleman or at any time thereafter lends credence to the finding that he did not instruct counsel to file an appeal during the second conversation.

11

In September 2007, the defendant wrote to the clerk and requested a copy of the docket sheet. He received a copy of the docket sheet, looked at it and did not see an entry for an appeal. Curiously, he did not telephone or otherwise contact counsel at this time about the absence of an appeal notice. Instead, he contacted his mother sometime in the fall of 2007 and asked her to find an attorney to file a section 2255 motion because that was his "last option because [counsel] didn't file an appeal." (Docket Entry # 81, p. 28).

His mother contacted Larry Novak ("Novak"), a Massachusetts attorney at the time, and eventually paid Novak a total of $5,000. Novak did not file a section 2255 motion and did not respond to Ruffin's telephone calls. When she went to his office, "there was no answer." (Docket Entry # 81, p. 46). In February 2009, the Massachusetts Board of Bar Overseers ("the board") temporarily suspended Novak's license to practice law. The board disbarred him on November 19, 2009. Meanwhile, the defendant filed this petition in March 2008.

## DISCUSSION

I. <u>Section 2255 Review</u>

Section 2255 allows "a prisoner in federal custody" to "petition the sentencing court to vacate, set aside or correct

the sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States." Conley v. U.S., 323 F.3d 7, 22 (1st Cir. 2003); 28 U.S.C. § 2255. The statute "provides for post-conviction relief in four instances, namely, if the defendant's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998) (citing Hill v. United States, 368 U.S. 424, 426-427 (1962)). "The catch-all fourth category includes only assignments of error that reveal 'fundamental defects' which, if uncorrected, will 'result in a complete miscarriage of justice,' or irregularities that are 'inconsistent with the rudimentary demands of fair procedure.'" Id. (quoting Hill v. United States, 368 U.S. at 428, with internal brackets omitted) Stated otherwise, "apart from claims of constitutional or jurisdictional nature, a cognizable section 2255 claim must reveal 'exceptional circumstances' that make the need for redress evident." Id. The defendant bears the burden of establishing the need for section 2255 relief. Id.

## II. Ground One

In ground one, the defendant submits that counsel rendered ineffective assistance in violation of the Sixth Amendment because he asked counsel to file a direct appeal and no appeal

13

was filed. (Docket Entry ## 55 & 56). The law is relatively settled.

If a defendant instructs his lawyer to file a direct appeal, the lawyer renders ineffective assistance by not following through with the ministerial task of filing a notice of appeal. <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000). Simply put, "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." <u>Id.</u> Indeed, when the lawyer "fails to file a requested appeal, a defendant is entitled to resentencing and to an appeal without showing that his appeal would likely have had merit." <u>Pequero v. United States</u>, 526 U.S. 23, 28 (1999); <u>accord</u> <u>Roe v. Flores-Ortega</u>, 528 U.S. at 477 (quoting <u>Pequero</u> in parenthetical).

In light of the facts found by this court, the defendant did not instruct counsel to file a direct appeal. The defendant did not make a request orally or in writing to counsel to file a direct appeal. Rather, counsel and the defendant discussed the issue twice, once at the courthouse and a few days later over the telephone. When the defendant telephoned counsel, he made an initial statement that he thought they should file an appeal but, in the context of the totality of the entire conversation, the statement was not a request or a demand that counsel file an

14

appeal.[12]  See generally Roe v. Flores-Ortega, 528 U.S. at 480 (citing Strickland v. Washington, 466 U.S. 688 (1984), and noting the focus "on the totality of the circumstances").  After the statement, counsel informed the defendant about the risks of an appeal, i.e., the government filing a cross appeal and an increase in the sentence.  After receiving and discussing this advice, the defendant did not reiterate any belief that he thought they should file an appeal.  He did not make a final decision of whether to file an appeal.  Instead, the defendant and counsel agreed that the defendant would get back in touch with counsel if he decided he wanted to file an appeal.  At all relevant times, the defendant knew about the right to file an appeal and the applicable ten day time period.  The defendant did not get in touch with counsel after the second conversation to discuss an appeal.  Accordingly, this is not a case in which the defendant "instructs counsel to file an appeal."  Id. at 478.

The issue therefore reduces to an "antecedent[] question" of "whether counsel in fact consulted with the defendant about an appeal."  Roe v. Flores-Ortega, 528 U.S. at 478.  A consult occurs when the lawyer advises "the defendant about the advantages and disadvantages of taking an appeal and mak[es] a

---

[12]  At the evidentiary hearing, counsel answered "That's correct" to the following question:  "And at no time did he ask you or demand that you file an appeal on his behalf, right?"  (Docket Entry # 81, p. 17).

15

reasonable effort to discover the defendant's wishes." Id. If the lawyer "consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal."[13] Id.

Here, a consult undeniably took place. During the discussion at the courthouse and again over the telephone, counsel advised the defendant that, because he had a sentence below the sentencing guideline, an appeal presented the risk of receiving a longer sentence. Counsel informed the defendant "there was very little chance" the sentence "would go down" and it was his belief "it would probably remain in tact." (Docket Entry # 81, p. 18). Counsel thus advised the defendant about the

---

[13] In full, the relevant section in Roe reads as follows:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning-advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.

Roe v. Flores-Ortega, 528 U.S. at 478.

risk of a cross appeal by the government resulting in a longer sentence.[14]

The defendant did not issue an express instruction to counsel to file a direct appeal during either of the two conversations. See Roe v. Flores-Ortega, 528 U.S. at 478 (if counsel "consulted with the defendant, . . . [c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal"). Instead, during the second conversation the defendant expressed an initial belief or thought that they should file an appeal. Counsel then informed him about the risks and, knowing about the ten day time frame, the defendant did not ask counsel to file an appeal during the second conversation. Based on the substance of the conversation, counsel knew that the defendant would get back in touch with him if the defendant wanted to file an appeal. After the second conversation, the defendant did not contact counsel about filing an appeal in the days immediately after the telephone conversation or in the next few months. In fact, counsel first learned about the defendant's dispute about the filing of an appeal when an attorney representing the defendant

---

[14] Counsel's failure to advise the defendant about other risks or benefits, including the relatively weaker merits of the Sixth Amendment issues, was not ineffective performance. It also fails to convince this court that a consult did not take place.

contacted counsel in January 2010. (Docket Entry # 81, pp. 20-21).[15]

In sum, counsel consulted with the defendant about filing an appeal. The defendant did not provide counsel with instructions to file an appeal. Accordingly, counsel did not render deficient performance or act in a professionally unreasonable manner. See, e.g., United States v. Doyle, 631 F.3d 815, 818 (6th Cir. 2011) (vacating order allowing section 2255 motion in light of counsel's consultations with defendant about appeal and "absence of an instruction from defendant to counsel to file an appeal").

CONCLUSION

Based on the foregoing reasons, this court **RECOMMENDS**[16] that the section 2255 motion (Docket Entry # 55) be **DENIED** to the extent that Ground One be **DISMISSED**.

       /s/ Marianne B. Bowler
   **MARIANNE B. BOWLER**
   United States Magistrate Judge

---

[15] The defendant's attorney filed an appearance on January 27, 2010.

[16] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objection within 14 days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order.